```
            UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF MISSISSIPPI
                   EASTERN DIVISION
```

DAREADELL TERRELL THOMPSON                              PLAINTIFF

VS.                                     CASE NO. 4:10CV102TSL-MTP

CITY OF MERIDIAN, MISSISSIPPI                           DEFENDANT

<u>MEMORANDUM OPINION AND ORDER</u>

In February 2010, plaintiff Dareadell Terrell Thompson was terminated from his employment as a police officer with the City of Meridian, ostensibly for fraudulently attempting to obtain workers' compensation benefits to which he was not entitled. Following his termination, and after timely filing an EEOC charge, plaintiff filed the present action against the City of Meridian under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1983, alleging he was terminated on account of his race, and further that he was denied a fair appeal of his termination, in violation of his Fourteenth Amendment due process rights. Plaintiff additionally asserted a state law claim for breach of contract. The City has moved for summary judgment on each of these claims. Plaintiff Thompson has responded to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion must be denied for the reasons that follow.

Turning first to his claim of race discrimination, in a case such as this, where the plaintiff has not presented direct summary judgment evidence of discrimination, the court applies the burden-shifting framework in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).[1]  Under this framework, the employee claiming discrimination must first establish a prima face of race discrimination.  See Lee v. Kansas City Southern Ry. Co., 574 F.3d 253, 259 (5th Cir. 2009).  Once an employee has made out a prima facie case, an inference of intentional discrimination is raised and the burden of production shifts to the employer, who must offer an alternative non-discriminatory explanation for the adverse employment action.  Id.  If the employer can provide a legitimate nondiscriminatory explanation, the inference of discrimination drops out and the burden shifts back to the employee to prove that "(1) the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative), or (2) the defendant's reason, though true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motives alternative)."  Davis v. Farmers Ins. Exchange, 372 Fed. Appx. 517, 519, 2010 WL 1404000, 2 (5th Cir. 2010).

---

[1] Plaintiff does not contend he has any direct evidence of discrimination.

The City contends that to establish a prima facie case, plaintiff must demonstrate that (1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was replaced by someone outside the protected class, or was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances. See Lee, 574 F.3d at 259. On the present motion, the City argues that plaintiff cannot establish his prima facie case because, in view of the offense for which he was terminated and his record of numerous and serious disciplinary infractions, he cannot demonstrate that he was qualified for the position of police officer, and neither can he identify any white officer who had a comparable disciplinary record and was not terminated.

To satisfy the qualification element of a prima facie case, a plaintiff need prove only that he satisfied the minimum qualifications for the position in question. See Taylor v. Peerless Industries Inc., 322 Fed. Appx. 355, 357 n.1, 2009 WL 837326, 1 n.1 (5th Cir. 2009) (observing that employer's argument that employee lacked the minimum qualifications for the position was "belied by the fact that [the employer] hired [the plaintiff] in the first place," and noting that "performance concerns are more appropriately addressed in assessing a plaintiff's assertion

that an employer's articulated reason for its action was a pretext"). In this analysis, it does not follow from the fact that the plaintiff repeatedly engaged in misconduct which might have warranted his discharge that he necessarily lacked the requisite qualifications for the position in question. Indeed, prior to the alleged infraction which resulted in his termination, plaintiff had committed a number of infractions, some serious, and yet his superiors evidently did not view him as unfit, or unqualified to serve as a police officer. See id.

As for comparators, plaintiff has identified eleven white officers he contends engaged in misconduct at least as serious if not more serious than his alleged misconduct and yet were not terminated. However, after thoroughly considering the admissible summary judgment evidence,[2] it is clear to the court that none of these putative comparators asserted by plaintiff qualifies as

---

[2]   The City has filed a separate motion to strike in which it seeks to strike among other things, testimony by plaintiff relating to alleged comparators which is not based on personal knowledge and/or which constitutes inadmissible hearsay. See Fed. R. Civ. Proc. 52(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."); Rule 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). Much of plaintiff's evidence relating to alleged comparators is inadmissible, so defendant's motion to strike is well taken, in part. In concluding there are no proper comparators, the court has considered only admissible evidence. The basis for the court's conclusion on the putative comparators will be addressed specifically when the court issues a ruling on the City's motion in limine to exclude evidence of the proffered comparators.

4

similarly situated to plaintiff in accordance with the standard recognized by the Fifth Circuit.  See Lee, 574 F.3d at 260-261 (explaining how to evaluate claims that other employees were similarly situated to plaintiff).

Nevertheless, in the court's opinion, the fact that plaintiff lacks comparator evidence does not doom his claim.  The Fifth Circuit has held that in the situation of a work rule violation, "a Title VII plaintiff may establish a prima facie case by showing 'either that he did not violate the rule or that, if he did, white employees who engaged in similar acts were not punished similarly.'"  Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1090 (5th Cir. 1995) (quoting Green v. Armstrong Rubber Co., 612 F.2d 967, 968 (5th Cir. 1980)).  The City's characterization of plaintiff's alleged fraud in connection with the Travelers check as violative of applicable civil service rules would seem to place plaintiff's offense in the work rule violation category.  And, given plaintiff's submission of competent evidence that he did not commit the violation for which he has terminated, the court concludes he has established a prima facie case.[3]

---

[3]   In its motion to strike, see supra note 2, the City asks that the court strike testimony by plaintiff describing his conversations with Travelers' representatives in which he claims he not only did not advise Travelers he was off work but in fact specifically reported he was at work; and other testimony by plaintiff in which he expressed his belief that he is the victim of racial discrimination.  Even without consideration of this evidence, the court finds there is sufficient evidence in the record to support plaintiff's claim that he did not commit the ultimate offense for which he was terminated.

In response, the City has obviously articulated a legitimate nondiscriminatory reason for the decision to terminate plaintiff's employment. Plaintiff maintains, and the court agrees, that he has presented sufficient evidence to cast doubt on the truthfulness of defendant's proffered reason for terminating his employment. There is evidence from which Chief Shelbourn could have concluded that plaintiff attempted to defraud Travelers. Yet it appears from evidence presented by plaintiff that while both the head of the human resources department and the internal affairs officer assigned by Chief Shelbourn to investigate plaintiff's alleged fraud initially suspected that plaintiff committed the offense, both came to believe he did not commit the offense. Under the circumstances, and particularly without evidence to show that Chief Shelbourn in fact believed plaintiff committed the offense at issue and perhaps, as well, explaining the basis for his arriving at a contrary conclusion to that reached by his investigator and the head of human resources, the court cannot conclude that the City is entitled to summary judgment on plaintiff's race discrimination claim.[4]

In addition to his race discrimination claim, plaintiff alleges that the City violated his Fourteenth Amendment due

---

[4] The Court recognizes that Chief Shelbourn's decision was upheld on appeal to the City's Civil Service Commission. However, the relevance of the Commission's ruling is in doubt, given plaintiff's due process challenge to the appeal and the court's conclusion, infra, that the City has failed to establish its entitlement to summary judgment on plaintiff's due process claim.

process rights in that (1) he was punished twice for the same alleged infraction; and (2) he was denied a fair appeal of his termination because of ex parte communications between the City and the Civil Service Commission.

The City acknowledges that Mississippi law permits termination of a civil service employee only for good cause, see Miss. Code Ann. § 21-31-71, and that therefore, plaintiff had a property interest in his employment. The City also acknowledges that under Mississippi law, good cause would not exist to sustain a civil servant's discharge for certain misconduct if he had been previously disciplined for that misconduct. See Ladnier v. City of Biloxi, 749 So. 2d 139, 153 (Miss. Ct. App. 1999). However, in this case, the record evidence does not support plaintiff's allegation he was discharged for an infraction for which he had previously been punished. Plaintiff's position, as the court understands it, is that Chief Shelbourn terminated him for prior offenses, for which he had already been disciplined by the former police chief; but that is not what occurred. Rather, in determining an appropriate disciplinary response for what he purportedly found to be plaintiff's attempt to defraud Travelers, Chief Shelbourn considered plaintiff's history of disciplinary suspensions, demotions and warnings. Such consideration is expressly permitted by the City's Civil Service Code of Rules and Regulations, which authorize termination after "progressive

discipline has failed to correct unacceptable behavior."[5]  As the City notes, plaintiff has cited no authority which holds that it is impermissible to take into account an employee's prior disciplinary record when determining whether good cause exists to warrant discharge.  Accordingly, summary judgment is in order on this claim.

Plaintiff further charges that his due process rights were violated by the City's ex parte communications with members of the Civil Service Commission concerning his appeal, which he alleges were intended to and did in fact influence the vote of Commission member Yvette Neal.  In support of his allegation, plaintiff has presented, first, his own testimony that he learned from Yvette Neal's husband, Alton Neal, that the City's chief administrative officer McDonald engaged in ex parte communications with Mrs. Neal, and that Mrs. Neal, who originally intended to vote against plaintiff's termination, changed her vote and voted to uphold the termination.  As the City correctly points out in its rebuttal and in its separate motion to strike, and contrary to plaintiff's urging, his testimony in this regard is hearsay and not competent summary judgment evidence.  However, in addition to his own testimony, plaintiff has presented an affidavit from Alton Neal,

---

[5] Specifically, Section 10.04 of the Code of Rules and Regulations of the Civil Service Commission permits termination of an employee "(1) After progressive discipline has failed to correct unacceptable behavior, or (2) In response to an infraction of such severity that a lesser action is clearly insufficient."

who recites that he was present during ex parte communications between McDonald and his wife concerning plaintiff's appeal, which resulted in Mrs. Neal's voting to uphold plaintiff's termination. The City has moved to strike Mr. Neal's affidavit on the basis that it is "self-serving and unreliable," and contends as the sole basis for summary judgment on this claim that once Neal's affidavit is stricken, there is no admissible evidence to support plaintiff's allegation that he was denied a fair appeal based on ex parte communications with Commission members.  In the court's opinion, however, the City's motion to strike Neal's affidavit is not well taken.

    The basis for the City's characterization of Neal's affidavit as self-serving is unclear, as is the basis for its suggestion that the affidavit is inadmissible because it is self-serving. The City's assertion that the affidavit is unreliable appears to be based on Yvette Neal's testimony that McDonald did not attempt to influence her vote and did not influence her vote, and on her further testimony that Alton Neal shot her four times.  Mrs. Neal's denial does not render Mr. Neal's contrary testimony unreliable; and while animosity of Alton Neal toward his wife, evidenced by his having shot her, might bear on Mr. Neal's credibility, it does not render his testimony inadmissible.  In its rebuttal on the motion to strike, the City contends additionally that Neal's affidavit is hearsay within hearsay;

however, it does not elaborate on the basis for this contention, which is not otherwise apparent.  While Alton Neal's affidavit is somewhat vague, he does appear to assert that he personally witnessed McDonald's alleged conversations with his wife.  The court is unable to conclude that Mr. Neal's affidavit is inadmissible; and therefore it is unable to conclude that the City has demonstrated that summary judgment is necessarily in order on this claim.[6]

Based on the foregoing, it is ordered that the City's motion for summary judgment is denied.

SO ORDERED this 1st day of February, 2012.

                                        /s/Tom S. Lee
                                        UNITED STATES DISTRICT JUDGE

---

[6] The court reiterates that the City offers the absence of proof of ex parte communications as the sole basis for seeking summary judgment on this due process claim.  If other potential grounds exist, in law or in fact, they have not been asserted.  The court notes, too, that the City purports to seek summary judgment on plaintiff's breach of contract claim on this same basis.  The motion will therefore be denied, as to that claim, as well.